AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
### District of Oregon

FILED 14 FEB '19 15:20 USDC-ORP

| | |
|---|---|
| United States of America<br>v.<br><br>DOUGLAS BRADEN SMYSER<br><br>*Defendant(s)* | )<br>)<br>)  Case No.  3:19-mj-29<br>)<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __February 13, 2019__ in the county of __Multnomah__ in the
_____ District of __Oregon and elsewhere__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 49 U.S.C. § 46504 | Interference with Flight Crew Members and Attendants |

This criminal complaint is based on these facts:

The attached affidavit of FBI Special Agent Damon W. Bateson

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Special Agent Damon W. Bateson, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 2/14/2019

_____
*Judge's signature*

City and state:  Portland, Oregon           Hon. Jolie A. Russo
*Printed name and title*

STATE OF OREGON           )
                          )      AFFIDAVIT OF Damon W. Bateson
County of Multnomah       )

I, Damon W. Bateson, being duly sworn, do hereby depose and state as follows:

### Introduction and Agent Background

1. I am a Special Agent (SA) of the Federal Bureau of Investigation (FBI) and have been so employed for over two years. I am currently assigned to the Portland Division of the FBI where I investigate violations of federal law, including but not limited to bank robberies, crimes against children, and other violent crimes. I have had extensive training in law enforcement techniques and in conducting these types of investigations. I am trained in investigating a wide variety of violations of federal criminal law having received over 800 hours of training at the FBI Academy. Prior to joining the FBI, I served in the United States Navy as an officer and received specific training as a Legal Officer, which involves conducting investigations into violations of the Uniform Code of Military Justice (UCMJ) and acting a legal advisor to various commanding officers of operational units.

2. This affidavit is submitted in support of a criminal complaint and arrest warrant charging DOUGLAS BRADEN SMYSER ("SMYSER"), d.o.b. XX/XX/1997, with interference with flight crew members and attendants in violation of Title 49 United States Code Section 46504.

3. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. The facts set forth in this affidavit are based on my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers, interviews of witnesses, a review of records related to this investigation,

communications with others who have knowledge of the events and circumstances described herein, and information gained through my training and experience.

## Applicable Law

4.      Title 49 United States Code Section 46504 provides that an individual on an aircraft in the special aircraft jurisdiction of the United States, who, by assaulting or intimidating a flight crew member or flight attendant of an aircraft, interferes with the performance of the duties of the member or attendant to perform those duties, or attempts or conspires to do such an act, shall be fined under Title 18, imprisoned for not more than 20 years, or both.

## Statement of Probable Cause

5.      On February 13, 2019, Compass Airlines Flight 6054 was scheduled to fly from Seattle-Tacoma International airport to Los Angeles International airport. The flight was diverted to Portland International Airport initially due to the pilot declaring a "level 2 threat" which is classified as "physically abusive behavior", the threat level was elevated to "level 3 threat," which is defined as "life threatening behavior," due to a passenger heading to the cockpit during approach and having to be restrained by fellow passengers.

6.      Captain J. S. advised that he was first alerted to SMYSER while the plane was taxiing on the ramp in Seattle. It was reported that SMYSER threw his backpack into the aisle and was behaving oddly. SMYSER denied the backpack was his after it began to vibrate and it was later discovered that an electric razor has been activated. SMYSER then claimed the bag was his.

7.      Captain J.S. stated about 20-30 minutes into the flight he was advised that SMYSER was pacing the aisle and refusing to sit down. Captain J.S. secured the cockpit doors

Page 2 – Affidavit of Damon W. Bateson

and was advised by the flight crew that they were concerned that he was going to rush the cockpit. Captain J.S. decided to divert the plane to Portland International Airport and made an announcement over the intercom.

8. Captain J.S. stated that on approach to Portland International Airport a third incident occurred. It was reported that SMYSER was in the aisle and approaching the cockpit. A passenger was required to restrain SMYSER until the flight landed.

9. T. A., a Compass Air crewmember, reported she was standing in first class cabin approximately 20 minutes into the flight when SMYSER approached her. T.A. reported SMYSER was acting "odd" and she asked him if he needed something. SMYSER told her "someone has a gun in the back row of this plane." T.A. asked if SMYSER knew who had the gun and SMYSER replied "let's just keep this between us." T.A informed the other crew members of SMYSER's statement and said it frightened her and she was scared for her life and the lives of everyone aboard the aircraft.

10. A.B., a passenger on Compass Air Flight #6054, stated he was asked to assist with an unruly passenger by the crewmembers. A.B. advised that SMYSER was pacing the aisles and not following the directions of the flight crew to remain seated. A.B. said that he walked to the rear of the flight and spoke to SMYSER. A.B. said he firmly advised SMYSER to remain in his seat and follow the instructions of the flight crew. A.B. stated SMYSER returned to his seat as the Captain announced that the flight would be diverting to Portland International Airport. A.B. stated SMYSER got up again and began to make his way to the front of the plane and A.B. had to restrain him. A.B. described this encounter stating SMYSER initially resisted by flailing his arms but soon submitted and allowed A.B. to put him in a rear seat.

Page 3 – Affidavit of Damon W. Bateson

11. J.C., another Compass Air passenger, reported that approximately 20 minutes into the flight SMYSER left his seat and walked towards the front of the plan and began loitering in the gallery area. J.C. noticed another passenger speak to him briefly and SMYSER returned to his seat. J.C. said a few minutes later the captain announced the plan was diverting to Portland International airport. J.C. stated SMYSER soon got out of his seat and began walking toward the front of the plane. J.C. observed a male flight attendant stood in SMYSER's and SMYSER said "I'm going up to 1st Class" to which the flight attendant replied "No sir you need to go back to your seat." SMYSER refused to comply and remained in the aisle. J.C. stated five unknown passengers then confronted SMYSER and convinced him to go back to his seat. J.C. stated that on approach to Portland International, SMYSER stood up in the aisle and began pacing back and forth. SMYSER became loud and started provoking other passengers. J.C. said an announcement was made for all passenger to return to their seats which SMYSER refused. J.C. then stated a flight attendant confronted SMYSER and told him to "Sit down immediately." Another passenger, identified as A.B., then confronted SMYSER placed his hands on SMYSER and escorted him to his seat and used his body weight to hold SMYSER down in the seat until the plane landed.

12. SMYSER was detained by Port of Portland Police officers who responded to the to the gate, and contacted SMYSER at the back of the plane. He was read his Miranda warnings, and agreed to speak to the officers about the flight. In summary, SMYSER admitted to approaching the cockpit multiple times during the flight. He stated he ingested methamphetamine before his flight. SMYSER reported that he was headed to Los Angeles, CA to drug rehab at a place called the Alo House in Malibu. He stated that he actually ate the

Page 4 – Affidavit of Damon W. Bateson

methamphetamine instead of injecting it, and that he was initially feeling "ok" at take-off. He stated that during the flight be became suspicious and paranoid, and that he was going to the cockpit to get "help." He stated that on the way to the cockpit, he stated in a mid-range voice "there's a gun." He said another passenger tackled him and took him to the back of the plane where he sat until contacted by Port of Portland Police officers after the plane diverted to Portland, Oregon. During the interview SMYSER wrote a signed apology note to the flight attendant for his actions. Medical personnel checked on SMYSER while he was detained and he was cleared. He was later transported to the Multnomah County Jail where he was lodged on state charges.

### Conclusion

13. Based on the foregoing, I submit there is probable cause to believe that DOUGLAS SMYSER has committed a violation of Title 49, United States Code, Section 46504, and request issuance of a warrant.

14. This affidavit, and the requested arrest warrant were reviewed by Assistant United States Attorney Paul T. Maloney who advised me that, in his opinion, probable cause exists to apply for an arrest warrant of DOUGLAS BRADEN SMYSER.

_____
Damon Bateson, Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me this 14th day of February 2019.

_____
The Honorable JOLIE A. RUSSO
United States Magistrate Judge

Page 5 – Affidavit of Damon W. Bateson